**DOCKETED**

DEC 0 5 2003

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

Howard E. Leventhal, an
individual; and Stealth
MediaLabs, Inc., a Nevada
Corporation,

     Plaintiffs

     vs.

Gene Byron Schenberg, an
individual; 321 Studios,
Inc., a Missouri
Corporation; and Robert H.
Moore, Rob Semaan, Scott
Christian, John Huhn, Mike
Wozniak, Thomas Fitzsimmons
and James Daly, individuals

     Defendants

Case No.

**03C 8772**

Amount Claimed:
**$5,000,000.00**

JUDGE RONALD GUZMAN

Cause of Action:
**Copyright Infringement**

MAGISTRATE JUDGE DENLOW

---

## BACKGROUND

     WHEREAS Plaintiff Leventhal is an Illinois resident and

Chief Executive Officer of Stealth MediaLabs, Inc. Plaintiff

Stealth MediaLabs, Inc. is a developer of computer software.

Defendant Gene Schenberg is a Missouri resident and former

employee of Stealth MediaLabs, Inc. Defendant 321 Studios, Inc.

is the current employer of Schenberg. Defendants Moore, Semaan,

Christian, Huhn and Wozniak are senior executive officers of

Defendant 321 Studios, Inc. Defendants Fitzsimmons and Daly are

former employers, current and longtime business associates of

Defendant Gene Schenberg.

     Plaintiffs respectfully bring the following complaints and

pray for relief claimed herein and as deemed just by this Court.

Leventhal et al vs. Schenberg et al
In the United States District Court,
Northern District of Illinois

## Cause of Action

## COPYRIGHT INFRINGEMENT

During the period commencing approximately January, 1999 and ending March 2002, Defendant Gene Schenberg was employed by the Plaintiffs with various responsibilities for production of revenue[1].

During the period of his employment by the Plaintiffs and predecessor companies, Defendant Gene Byron Schenberg, utilizing the facilities and financial resources of the Plaintiffs, built and assembled a database of the business names, individual contact names, addresses and preferences of a list of customers, target customers and prospective customers[2].

Under the United States Copyright Act of 1976, Title 17, Ch. 5, Sec. 501, Copyright Infringement is defined as follows:

> *Sec. 501. - Infringement of copyright*
>
> *(a)*
>
> *Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 121 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A(a). As used in this subsection, the term ''anyone'' includes any State, any instrumentality of a State, and any officer or*

---

[1] Exhibit A, Sworn testimony of Gene Byron Schenberg, Vol I, Page 32

1  employee of a State or instrumentality of a State acting in

2  his or her official capacity. Any State, and any such

3  instrumentality, officer, or employee, shall be subject to the

4  provisions of this title in the same manner and to the same

5  extent as any nongovernmental entity.

6

7       (b)

8

9       The legal or beneficial owner of an exclusive right

10 under a copyright is entitled, subject to the requirements of

11 section 411, to institute an action for any infringement of

12 that particular right committed while he or she is the owner

13 of it. The court may require such owner to serve written

14 notice of the action with a copy of the complaint upon any

15 person shown, by the records of the Copyright Office or

16 otherwise, to have or claim an interest in the copyright, and

17 shall require that such notice be served upon any person whose

18 interest is likely to be affected by a decision in the case.

19 The court may require the joinder, and shall permit the

20 intervention, of any person having or claiming an interest in

21 the copyright.

22

23

24      Plaintiff Leventhal is a majority shareholder of Plaintiff

25 Stealth MediaLabs, Inc. (hereinafter "Stealth"); and also was a

26 majority shareholder and CEO of predecessor company BitzMart,

27 Inc. (hereinafter "BitzMart"). Leventhal was also Chief Executive

28 Officer and a majority shareholder of Primecom Interactive, Inc.,

---

[2] Exhibit A, Sworn testimony of Gene Byron Schenberg, Vol I, Page 25

Leventhal et al vs. Schenberg et al
In the United States District Court,
Northern District of Illinois

1    (hereinafter "Primecom"). Defendant Gene Schenberg's series of

2    employments by the Plaintiffs began with his employment by

3    Primecom.

4         During the Period of Defendant Gene Schenberg's

5    (hereinafter "Schenberg" or "Schenberg's") employment by the

6    Plaintiffs, Plaintiffs investigated, researched, built, assembled

7    and constructed a list of customers, target customers and

8    prospective customers through substantial investments of

9    Plaintiffs' own financial and human resources, devotion of

10   physical facilities and storage upon the electronic facilities

11   exclusively owned by the Plaintiffs. This list was integrated by

12   the Plaintiffs into an electronic database (hereinafter the

13   "Database") and was generated, gathered and maintained by the

14   Plaintiffs through a substantial expenditure exclusively of

15   Plaintiffs' financial and human resources.

16        As the Database was developed, and at all times relevant

17   hereto, Plaintiffs relied upon the Database and further

18   development of the Database as a principal tool for the

19   generation of revenue for the Plaintiffs and belonging to the

20   Plaintiffs. Schenberg was a principal custodian of the Database

21   in his capacity ONLY as an employee of the Plaintiffs.

22

23

24        During March of 2002, Schenberg voluntarily resigned as an

25   employee of BitzMart[3]. Subsequent to his resignation, Schenberg

26   became employed by Defendant 321 Studios, Inc. (hereinafter

27   "321")[4]. At a later point, Schenberg left the employ of Defendant

28   321 and came into the employ of another company jointly operated

---

[3] Exhibit A, Sworn testimony of Gene Byron Schenberg, Vol II, Page 163

1    by Schenberg and Defendants Thomas Fitzsimmons (hereinafter

2    "Fitzsimmons") and James Daly (hereinafter "Daly")[5]. Subsequently,

3    Schenberg again came into the employ of 321, and continues in the

4    employ of 321 through and including the filing date of this

5    complaint.

6        Defendants Fitzsimmons and Daly are principal owners of

7    Channel Sources, Inc. a marketing and consulting firm engaged in

8    the practice of consulting to software production companies on

9    the topic of securing distribution in retail channels for

10    software products[6].

11        Prior to his employment by the Plaintiffs, Schenberg was

12    employed by Fitzsimmons and Daly as an order-taker for Channel

13    Sources[7]. Schenberg is known by the Plaintiff's certain knowledge

14    to have had a long-standing business relationship with

15    Fitzsimmons and Daly.

16        Defendant 321 distributes its software products in retail

17    channels such as CompUSA[8].

18        According to the sworn testimony of Schenberg in another

19    matter [as noted on the cover pages of Exhibit A], during the

20    period of his employment by the plaintiffs, he (Schenberg) copied

21    BitzMart's Database from BitzMart's files onto personal computing

22    devices kept by him for his own use[9].

23

24        Further according to the sworn testimony of Schenberg,

25    subsequent to his departure from BitzMart, he (Schenberg) copied,

26    misappropriated and unlawfully removed BitzMart's Database from

---

[4] Exhibit A, Sworn testimony of Gene Byron Schenberg, Vol II, Page 184
[5] Exhibit A, Sworn testimony of Gene Byron Schenberg, Vol II, Page 183
[6] Exhibit B, Channel Sources website pages facsimile
[7] Exhibit A, Sworn testimony of Gene Byron Schenberg, Vol II, Page 159
[8] Exhibit C, Excerpt of CompUSA advertisement promoting a 321 Studios' product

1    BitzMart's facilities and stored it using an "ACT" database

2    program[10], in a format easily transferable to others using

3    commonly available personal computing devices.

4         Subsequent to Schenberg's employment by 321, the breadth of

5    321's retail distribution increased, as evidenced by mass

6    publication of retail advertisements promoting the availability

7    of 321's software products[11].

8         During the period of Schenberg's employment by Primecom and

9    later BitzMart, the Plaintiffs allege that their businesses

10   suffered serious harm as a direct result of the actions of

11   Schenberg, Fitzsimmons and Daly. Fitzsimmons and Daly also

12   provided consulting services to Primecom. At Primecom, Schenberg,

13   Fitzsimmons and Daly caused Primecom to manufacture and ship more

14   than $4 million worth of merchandise to various retailers and

15   arranged that payments to Primecom amounted to less than 15% of

16   the billing prices therefore, effectively bankrupting Primecom.

17        At BitzMart, Schenberg accepted his responsibilities to

18   produce revenue on a commission basis only.[12] Exhibit D is an

19   excerpt from a BitzMart Private Equity Placement Memorandum which

20   Schenberg himself presented to several of his own relatives in

21   order to sell them shares in BitzMart, in order to receive

22   (according to Schenberg's testimony, and claimed in his Missouri

23   lawsuit) an illegal securities sales commission. Exhibit D, Page

24   38 clearly specifies that Schenberg was to receive compensation

25   based only on production of revenue. Yet, during the period of

26   his employment, Schenberg produced absolutely zero revenue[13]. None

[9] Exhibit A, Sworn testimony of Gene Byron Schenberg, Vol 1, Page 25
[10] Exhibit A, Sworn testimony of Gene Byron Schenberg, Vol I, Page 25
[11] Exhibit C, Excerpt of CompUSA advertisement promoting a 321 Studios' product
[12] Exhibit D, BitzMart, Inc Private Placement Memorandum, excerpted Page 38
[13] Exhibit A, Sworn testimony of Gene Byron Schenberg, Vol II, Page 164

Leventhal et al vs. Schenberg et al
In the United States District Court,
Northern District of Illinois

1     the less, Schenberg was generously advanced funds by the

2     Plaintiffs as a loan against future earnings based upon sales,

3     which were chronically promised by Schenberg but never

4     materialized. Schenberg subsequently thanked the Plaintiffs for

5     their generosity by suing the Plaintiffs for income never earned,

6     Case Number 02CC-001636 Z CV in the Circuit Court of St. Louis

7     County Missouri; in an action initiated while Leventhal and his

8     spouse were traveling in a remote region of China to adopt an

9     orphaned baby girl.

10

11    The Plaintiffs hereby allege as follows:

12

13         1. Schenberg, Daly and Fitzsimmons conspired to plant

14            Defendant Schenberg within Primecom and subsequently

15            BitzMart for a number of their own purposes, among

16            these, to steal, usurp and convert for their own

17            business purposes the Database exclusively belonging to

18            and an essential business asset of the Plaintiffs.

19

20         2. Schenberg, Daly and Fitzsimmons did, in fact, steal,

21            usurp and convert for their own business purposes the

22            Database property of the Plaintiffs.

23

24         3. Defendants 321, Robert H. Moore, Rob Semaan, Scott

25            Christian, John Huhn, Mike Wozniak, were induced to hire

26            Schenberg and engage the services of Channel Sources,

27            Fitzsimmons and Daly for motivations including the

28            availability of the Plaintiffs' Database; and therefore

[7]

acted as co-perpetrators against the Plaintiffs in the theft of Plaintiffs' Database.

4. Plaintiffs above described businesses, which had been valued from $5 million to $16 million and more by outside experts, were destroyed as a direct result of the Defendants' actions.

5. Leventhal's income flow from the destroyed businesses was likewise destroyed as a direct result of the Defendants' actions.

6. Leventhal's asset value in his shares owned in both businesses was likewise destroyed as a direct result of the Defendants' actions.

The Congress of the United States recently introduced new legislation, H.R. 3261, October 2003, recognizing the emerging high value of business databases as essential business assets, and the seriousness of harm coming to database owners when such property is stolen. The bill's synopsis begins: "To prohibit the misappropriation of certain databases", and applies directly to the circumstances of this case.

The Defendants have clearly and willfully caused serious certain damage to the Plaintiffs, violated existing federal Copyright law and most certainly violated the spirit and intent of a new emerging law adaptive to technological evolution.

1        **JURISDICTION**

2        As to the issue of jurisdiction of the United States Court in

3    this matter:

4        1. COPYRIGHT LAW is governed by the United States Code of Federal

5           Regulations, and not by state law.

6        2. DIVERSITY OF CITIZENSHIP is a principal qualifier for Federal

7           jurisdiction. The Plaintiffs hereof reside in Illinois and are

8           incorporated in Nevada. Schenberg is a Missouri resident and

9           321 Studios, Inc.'s offices are located in Missouri.

10          Defendants Fitzsimmons and Daly and/or their principal

11          business offices are located in Connecticut.

12

13       Based upon the above facts, there can be no controversy as to

14          jurisdiction in this matter.

15

16       NOW THEREFORE, the Plaintiffs respectfully request and pray this

17   court for relief and judgment against the Defendants as follows:

18

19   1.  A joint and several monetary judgment for real damages against the

20       Defendants and in favor of the Plaintiffs in the amount of a minimum

21       of $5,000,000.00 or more, as this court deems fit.

22

23   2. A joint and several monetary judgment for punitive damages against

24       the Defendants and in favor of the Plaintiffs in an amount as this

25       court deems fit.

26

27   3. An order enjoining the Defendants from using the Database or any

28       derivative work in any current or future business activity.

[9]

1

2    4. A order to disgorge 100% of profits from the Defendants to the

3       Plaintiffs, gained by the Defendants during the period of

4       Defendants' unlawful use of the Plaintiffs' Database.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Leventhal et al vs. Schenberg et al
In the United States District Court,
Northern District of Illinois

**AFFIDAVIT OF TRUE AND CORRECT INFORMATION**

I, Howard E. Leventhal, of lawful age upon oath deposes and says: that all the facts alleged by the Plaintiffs herein are true and correct to the best of my own knowledge.

Further affiant sayeth not.

_____

Signature of Affiant

State of _Illinois_

County of _McHenry_

The above and foregoing Affidavit as subscribed before me this _3rd_ day of _December_ , A.D., 20_03_ personally by _Michelle A. Shilts_ .

_Michelle A Shilts_

Notary Public

> **Official Seal**
> Michelle A Shilts
> Notary Public State of Illinois
> My Commission Expires 09/08/04

My Commission expires: _9/8/04_

1

2

3                    **AFFIDAVIT OF MAILING**

4

5        I, Howard E. Leventhal, of lawful age upon oath deposes and says:

6    that I personally transmitted to the Defendants named herein true,

7    complete and correct copies hereof. Each Defendant was sent a copy of

8    this matter by, in every case, first class mail, plus some combination

9    of electronic mail, facsimile transmission and/or air courier service.

10   Said transmissions were made on ___12/3/03___, to the names

11   and addresses scheduled under "SERVICE TO" below.

12

13        Further affiant sayeth not.

14   _____

15        Signature of Affiant

16

17                    State of _Illinois_

18                    County of _McHenry_

19

20   The above and foregoing Affidavit as subscribed before me this _3rd_ day

21   of _December_, A.D., 20_03_ personally

22   by _Michelle A. Shilts_.

23   _Michelle A Shilts_          Offical Seal
                                  Michelle A Shilts
24   Notary Public               Notary Public State of Illinois
                                  My Commission Expires 09/08/04
25   My Commission expires: _9/8/04_

26

27

28

                              [12]                    Leventhal et al vs. Schenberg et al
                                                      In the United States District Court,
                                                      Northern District of Illinois

**SERVICE TO:**

Gene Byron Schenberg

402 Country Oak Drive,

Chesterfield, Missouri, 63017


Gene Byron Schenberg

C/o 321 Studios, Inc.

17 Research Park Drive

St. Charles, MO 63304

Phone: 636-720-3600

Fax: 636-720-3899


321 Studios, Inc.

17 Research Park Drive

St. Charles, MO 63304

Phone: 636-720-3600

Fax: 636-720-3899


Robert H. Moore

C/o 321 Studios, Inc.

17 Research Park Drive

St. Charles, MO 63304

Phone: 636-720-3600

Fax: 636-720-3899


Rob Semaan

C/o 321 Studios, Inc.

[13]

1    17 Research Park Drive

2    St. Charles, MO 63304

3    Phone: 636-720-3600

4    Fax: 636-720-3899

5

6    Scott Christian

7    C/o 321 Studios, Inc.

8    17 Research Park Drive

9    St. Charles, MO 63304

10   Phone: 636-720-3600

11   Fax: 636-720-3899

12

13   John Huhn

14   C/o 321 Studios, Inc.

15   17 Research Park Drive

16   St. Charles, MO 63304

17   Phone: 636-720-3600

18   Fax: 636-720-3899

19

20   Mike Wozniak

21   C/o 321 Studios, Inc.

22   17 Research Park Drive

23   St. Charles, MO 63304

24   Phone: 636-720-3600

25   Fax: 636-720-3899

26

27   Thomas Fitzsimmons

28   Channel Sources Associates

[14]

1    246 Federal Rd

2    Suite A-12

3    Brookfield, CT 06804

4    Ph 203-775-6464

5    Fx 203-775-4111

6

7    Counsel for Schenberg:

8    Richard F. Huck, Esq.

9    Blumenfeld, Kaplan & Sandweiss

10   168 North Meramec, Suite 400

11   St. Louis, MO   63105

12                                    RESPECTFULLY SUBMITTED

13                                    TO THIS HONORABLE COURT:

14                                    Acting Pro Se in this Matter

15

16

17                                    Howard E. Leventhal

18                                    Chief Executive Officer

19                                    Stealth MediaLabs, Inc.

20                                    11475 Commercial Ave

21                                    Suite 11

22                                    Richmond, IL 60071

23                                    Ph 847-778-1801

24                                    Fx 312-896-9235

25                                    Email: hleventhal@hotmail.com

26

27

MASUGA, INC. COURT REPORTING 314/878-3257

```
 1              IN THE CIRCUIT COURT OF THE
                    COUNTY OF ST. LOUIS
 2                    STATE OF MISSOURI

 3
     GENE SCHENBERG,            )
 4   an individual,             )
                                )
 5        Plaintiff,            )
                                )
 6   vs.                        )   No. 02CC-001636 Z CV
                                )
 7   BITZMART, INC., an         )
     Illinois corporation,      )
 8                              )
          Defendant.           )
 9
     APPEARANCES:
10
          For Plaintiff:  Blumenfeld, Kaplan & Sandweiss
11                        By Richard F. Huck, Esq.
                          168 North Meramec
12                        Suite 400
                          St. Louis, MO  63105
13
          For Defendant:  Herzog, Crebs & McGhee, LLP
14                        By Gene J. Brockland, Esq.
                          One City Centre
15                        24th Floor
                          515 North Sixth Street
16                        St. Louis, MO  63101

17        Also Present:  Mr. Howard Leventhal

18

19        VOLUME I THE DEPOSITION of GENE SCHENBERG was

20   taken on June 10, 2003, between the hours of eight

21   o'clock in the forenoon and six o'clock in the

22   afternoon of that day in the County of St. Louis,

23   State of Missouri, before me, Sara Alice Masuga,

24   Commissioner, a Notary Public, Certified Shorthand
```

EXHIBIT A

2    likelihood been in the latter six months of the

3    company time.  When the company shifted focus to

4    call on content providers to sell the technology, I

5    think that's when I started to build the database.

6        Q.   And about when did that occur to your

7    recollection?

8        A.   Sometime in the last six months that I

9    was there.  I can't specifically --

10       Q.   Okay.

11       A.   -- remember.

12       Q.   Do you still have that ACT database on

13   your computer?

14       A.   I believe I do.

15       Q.   How about 16; do you have that?

16       A.   You already have those.  Or let me

17   rephrase that.  Howard already has those.  They

18   would have been attached to my expense reports and

19   submitted at the time that I expensed my phone

20   bills.

21       Q.   How about 17; any -- any documents?

22       A.   No.

23       Q.   Eighteen?

24       A.   No.

25       Q.   How about 19?

EXHIBIT A

24    presentation which I had on a CD or maybe he

25    e-mailed it.  I don't remember which.  It really

1    didn't apply to this particular sales presentation,

2    but if that's all I had to work with, then that's

3    all I'd have to work with.

4         Q.   When you made sales calls on behalf of

5    BitzMart, did you ever use PowerPoint?

6         A.   Occasionally this particular presentation

7    that Howard put together, yes.

8         Q.   And that was a presentation regarding

9    what?

10        A.   The watermarking technology.

11        Q.   All right.  And when you made those

12   Power -- Well, on how many occasions did you use

13   that presentation to make -- use that PowerPoint

14   presentation on a sales call; do you know?

15        A.   I e-mailed it to a lot of people, you

16   know, as an introduction or as part of a sales

17   process in e-mailing and phone calling people.  And

18   actually in person presentations?  Probably not more

19   than three or four times.

20        Q.   Okay.  When you made in person

21   presentations using PowerPoint, would you just have

22   people gather around the laptop or did you take a

EXHIBIT A

1      Q.  -- other than raising money for

2  investments.

3      A.  Okay.

4      Q.  At what time were you focused on selling

5  a product?

6      A.  I would say, without remembering specific

7  dates, probably the last half to a third of the

8  BitzMart time, whatever that amount actually --

9  dates are, I couldn't tell you.

10      Q.  Well, certainly in the months -- Well --

11      A.  If I had to guess, I'd say probably from

12  the latter part of -- Let's see.  March, 2002?

13  Probably the -- Probably the latter half of 2001

14  through the spring of 2002.

15      Q.  All right.

16      A.  That'd be a rough guess --

17      Q.  All right.

18      A.  -- without looking at notes.

19      Q.  All right.  So, from roughly mid '01 till

20  the end, which is spring of '02 --

21      A.  That would be a fair --

22      Q.  -- your focus was sales?

23      A.  That would be a fair rough time frame,

24  yes.

25      Q.  All right.  Prior to mid '01, you didn't

Page 163

EXHIBIT A

1    and shut it down.

2         Q.   What are you doing today?

3         A.   Today I'm the director of product

4    acquisitions for 321 Studios.  I went back to my

5    former employer.

6                        (At this point, Defendant's

7                         Exhibit J was marked

8                         for identification.)

9         Q.   I'll show you what's been marked as

10   Defendant's Exhibit J.  Is that your signature on

11   that document?

12        A.   It is.

13        Q.   All right.  Is this a -- This references

14   a Toshiba laptop computer system that you received

15   from BitzMart; is that accurate?

16        A.   I'm sorry.  Ask the question again?  I

17   was reading while you were talking to me.

18        Q.   Does Exhibit J reference a Toshiba laptop

19   computer system that you received from BitzMart?

20        A.   That's what it acknowledges, but it

21   didn't really -- I mean, it -- there's a story

22   behind it, so it -- that's -- that's what the --

23        Q.   And I'm sure you're going to tell me --

24        A.   -- that's what the --

25        Q.   -- what's the story.

Page 184

EXHIBIT A

1     A.   No, but, I mean, it happens all the time,

2  so there's -- there would be no -- nothing specific

3  that would stand out.

4     Q.   How about with the people from Channel

5  Sources, with Daley or Fitzsimmons; did you have

6  contact with them while you were with BitzMart?

7     A.   No, no more or less than I did as people

8  who I know in the industry on an ongoing basis.

9     Q.   You're in business with them today; is

10  that correct?

11     A.   That is incorrect.

12     Q.   Okay.  Were you in business with them

13  when we were last taking your deposition --

14     A.   They were -- They were --

15     Q.   -- or am I mistaken?

16     A.   Yes, they were silent partners in a -- in

17  a business venture that I had.

18     Q.   And is that no longer the case?

19     A.   That is no longer the case; you are

20  correct.

21     Q.   What has become of that?

22     A.   It was a -- It was a six month

23  arrangement to try to build an affili- -- affiliate

24  marketing business and at the end of the six month

25  period we decided that the business wasn't viable

**EXHIBIT A**

1    Primecom going public.  There was also a discussion,

2    I think, at the time that I was hired to go work for

3    Primecom that one of the things that I didn't get at

4    Channel Sources which lured me away from Channel

5    Sources was an equity position in the company.  And

6    when Primecom failed to go public or provide a

7    meaningful equity position for me in the company,

8    Howard offered to transfer that equity into

9    BitzMart, which is why I was able to purchase this

10   number of shares at this price.  It was a number

11   that -- that either we agreed to or he offered or

12   got Burt and the other people in the company to

13   agree to.  I'm not quite sure how the amount was

14   arrived at, but it was amount that I was satisfied

15   with.

16        Q.    And this was at the time that you were

17   coming over to BitzMart as an -- as a BitzMart

18   employee?

19        A.    Somewhere in the midst of those

20   discussions, it was a transfer of equity from

21   Primecom into BitzMart because there was no equity

22   to have in Primecom.  So, if you -- if you ask the

23   question was I entitled to it relating all the way

24   back to Primecom because that's where the equity

25   originally came from?  Absolutely.

Page 159

**EXHIBIT A**

1   see any of your job as being selling a product or

2   selling a concept?

3        A.   It's hard for me to remember exactly when

4   the -- when the different points of focus changed to

5   be able to answer that question accurately here.  If

6   you'll let me sit with my e-mails or at my computer

7   where I could pull them up, I might be able to give

8   you a better time frame, but when the company first

9   started, there was nothing to sell.  It was a

10  concept.

11       Q.   Well, all right.  Then let's focus on

12  that mid '01 onward time frame then when you're

13  definitely out trying to make sales.

14       A.   Okay.

15       Q.   Were you successful in that?

16       A.   No.

17       Q.   Did you make any sales?

18       A.   No.

19       Q.   Do you have an opinion now as to why

20  not?

21       A.   Well, I was -- I can speculate on a

22  variety of reasons.  When we were selling the

23  portal, I don't know that I was successful because I

24  don't think the market was ready for a portal or

25  wanted a portal or that we had perhaps the right

Page 164

EXHIBIT A

# Ch@nnelSources

Winning Sales Strategies that Build
Relationships for the Life of Your Business



**CONTACT US**
ChannelSources
246 Federal Road, Suite A-12
Brookfield, CT 06804
203 775 6464
203 775 4111 Fax

(email)

**GETTING ON THE SHELF**
➤ SALES OBJECTIVES
➤ TRENDS

**SALES REPRESENTATION**
➤ SERVICES
➤ PEOPLE

**THE PROVEN SUCCESS**
➤ THE SHELF
➤ SOURCING
➤ DEPLOYMENT
➤ THE FIELD

## People

Executing product roll outs is essential to the
growth of your business. ChannelSources will
work with you to develop launch plans that
will work. With a 15 year relationship with
major distributors, ChannelSources helps you
manage the process of getting product
through distribution and onto the retailer's
shelves with minimal hassle.

| | |
|---|---|
| **Bob Allen**<br>Director, Canadian Accounts | **Ted Allen**<br>Director, Canadian Accounts |
| **Jim Daly**<br>President | **Dan Carlson**<br>Director, Distribution |
| **Thomas Fitzsimons**<br>Executive Vice President | **Diane Daudelin**<br>Sales Coordinator |
| **Jo-Ann Hernandez**<br>Vice President | **Ira Feigelman** |
| **Terry Hatfield** | **Paul Hertz**<br>Vice President |
| **Kasey LaPlant**<br>Receptionist | **Richie Leitner**<br>Senior Vice President |
| **John Sage** | **Kathy Sutter**<br>Office Manager |
| **Dan Colwell** | |

EXHIBIT B

# Ch@nnelSources

**Winning Sales Strategies that Build
Relationships for the Life of Your Business**



CONTACT US
ChannelSources
246 Federal Road, Suite A-12
Brookfield, CT 06804
203 775 6464
203 775 4111 Fax

**email**

GETTING ON THE SHELF
➤ SALES OBJECTIVES
➤ TRENDS

SALES REPRESENTATION
➤ SERVICES
➤ PEOPLE

THE PROVEN SUCCESS
➤ THE SHELF
➤ SOURCING
➤ DEPLOYMENT
➤ THE FIELD

## The Proven Success

### The Shelf

ChannelSources makes a commitment to a product beyond ju on the shelf. Once there, ChannelSources plays a critical role the product visible, working with the retailer in category pron managing turns, and keeping inventory levels current.

### Retailer and Distribution Partners the Battlefield.

For over ten years, ChannelSources sales associates have re products in North America to over 100 Retail Chains, with ov locations, and the growing market of e-tailer (Internet Resell proud to have launched dozens of new products and Internat Brands.

### The Battle Field

| | | |
|---|---|---|
| Software | **Mass Merchandisers (Continued)** | **Warehouse C** |
| Hardware | Dillard's    200 | Sam's    500 |
| Computer Super Stores | Rex Stores    130 | Costco Wholes: |
| Office Supply Super Stores | Radio Shack    6700 | B.J.'s Warehou |
| Mass Merchandise/Dept. Stores | London Drugs (Canada) 40 | Warehouse Clu |
| Consumer Electronic/Buying Groups | Zellers (Canada)    240 | Catalog Direc Retailers |
| Office Superstores | **Consumers** | Mac/Micro War |
| Bookstores | **Electronic/Buying Groups** | Tiger Software |
| Corporate | Best Buy    475 | PC Zone    1 |
| Reseller/Government | Circuit City Stores    620 | PC Connection |
| Warehouse Clubs | J & R Electronics    1 | Educational Re |
| Catalog Direct Retailers | The WIZ    17 | Computability |
| National Distributors & Rack Jobbers | Good Guy's    72 | Scholastic |
| New Markets | Future Shop (Canada) | Outpost    1 |
| Mac Specialists | NATM | CyberWarehou |
| Software Only | ABC Warehouse    38 | Digital River |
| GameStop (Including FuncoLand)    800 | American TV & Appliance 10 | American Onlin |
| Electronic Boutique    820 | P.C.Richard    44 | Amazon.com |
| Software Plus    1 | RC Willey    3 | 4Sure.com |
| **Hardware Retailers** | Roberds    15 | Buy.com (U.S. 1 |
| Computerland    100 | Sound Playground    4 | Onvia.com (Ca |
| Micro-Age    150 | American Furniture    3 | ShopTohsiba |
| IE. Group/Connecting Point 200 | Boscov's    21 | Dell    1 |
| PC Warehouse (purchase seperately)    87 | Brandsmart USA    5 | Gateway    1 |
| Hartco (Canada)    160 | H.H.Gregg    22 | Insight    1 |
| **Computer Super Stores / Chains** | Cousins    2 | AOL    1 |
| Comp USA    226 | Heilig-Meyers    1200 | **National Distr** |
| Micro Center    20 | Lack's    10 | Ingram Micro T |
| Fry's Electronics    20 | Hollytron 3 | Navarre Infogr |
| Micro Access    4 | A & B Sound (Canada) 22 | Visco Entertain |
| Computer Warehouse    9 | Ballio's 2 | Dr. Bott (Mac C |
| ComputreWare    8 | Brick Warehousev (Canada) 64 | **Distributors** Douglas Stewa |
| | Nebraska Furniture Mart 1 | Value |
| | **Office Super Stores** | Triad (Canada) |
| | Office Depot 860 | **New Market** Toys "R" Us |

EXHIBIT B

Case: 1.03-cv-08772 Document #: 1 Filed: 12/03/03 Page 26 of 29 PageID #:26

 

**CompUSA.com**
WHERE AMERICA BUYS TECHNOLOGY

PENNY SHIPPING ON EVERYTHING! click here for details    View Cart | My Account | Order Locations | Customer Service | 

Accessories   Computers   Computer Upgrades   Digital Cameras   Gaming   Networking   Notebooks   PDAs

SEARCH:  [Enter Your Search Term]  in  [All Categories]  GO!  Tips

CompUSA.com » Departments » Software » CD / DVD Creation



**DVD XCopy Platinum**
Manufacturer: 321 Studios
Mfg Part #: 200000
Product Number: 306696

Price: **$149.99**

Enter your zip code under "Check Store Inventory" to see In-store pickup availability. Learn More.

Usually S

(Deliv

Check
Enter Z

Prir
E-Ma
C

Penny Shipping on Everything 11/27-11/29!

**Product Information | Rebate Information**

**(Based on manufacturer's information)**

The first movie backup software that can satisfy even the most critical fan With DVD X Copy Platinum YOU are of your movie backup. Most DVD movies are written on DUAL-layer DVDs – but recordable DVDs are only sing order to backup an entire movie, some elements must be compressed to make it fit. But this results in quality th enough for the most demanding movie buff.

New TDF technology makes the perfect backup possible. With 321 Studio's breakthrough new compression tec - you can completely customize the compression of each scene. If you want your 3 hour movie to fit on one DVI can. If you want it to fit on 2 DVDs, now you can – and you decide what to compress and what not to. In fact, D' comes with a unique preview feature so you can see how various compression percentages will look before you

| Platform: | PC |
|---|---|
| Media Format: | CD-ROM |

*Price includes one or more rebates. Click on price for more details. □Price shown is an internet special. Click on product for more details. ⁺Pri all stores. Check your local store's inventory before selecting In-Store Pick-Up. ‡Products with this notation are refurbished, please click he Pricing and availability information is up-to-date as of 11/28/2003 9:29:43 AM. Listed prices are national prices, and actual retail prices ma Products are sold on a first come, first serve basis. ⁺Savings percentage reflects the lowest price shown.

**EXHIBIT C**

BITZMART, INC. | PRIVATE PLACEMENT MEMORANDUM

million through initial public offerings and follow-on offerings. The firm operates branch locations across the United States with over 180 registered representatives. Offers investments to individuals and institutions via a distribution network established throughout the United States and, through syndicated contacts, in western Europe. Website: www.schneider-securities.com

## Director Compensation

We currently provide a $2,500 per year stipend to our (non-payroll) directors for their service as members of our board of directors. We also reimburse all directors for certain expenses in connection with attendance at board meetings.

## Executive Compensation

The following table sets forth the compensation plan for services rendered to our Company for the fiscal year ended December 31, 2001 by our senior management.

### Summary Compensation Table

| Name and Principal Position | Year | Salary ($) | Bonus ($) | Other Annual Compensation ($) | All Other Compensation ($) |
|---|---|---|---|---|---|
| Howard E. Leventhal, President, CEO & Director | 2000 2001 | $-0-$[1] $150,000[1] | -0- -0- | -0- -0- | -0- -0- |
| Anan Y. Yaagoub Chief Technology Officer | 2001 | $130,000[2] | -0- | -0- | -0- |
| Gene Schenberg Chief Marketing Officer | 2001 | [3] | [3] | -0- | -0- |

(1) Mr. Leventhal has elected to defer a portion of his compensation for the fiscal year ended December 31, 2001. He will be paid at the annual rate of $120,000 per year until certain milestones, as yet unspecified by the Board of Directors, are achieved.

(2) Mr. Yaagoub has elected to defer a portion of his compensation for the fiscal year ended December 31, 2001. He will be paid at the annual rate of $40,000 per year until certain milestones, as yet unspecified by the Board of Directors, are achieved.

(3) Mr. Schenberg will receive certain incentive compensation related to revenue production, in an amount and formula as yet to be determined by the Board of Directors.

EXHIBIT D

Civil Cover Sheet

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

DOCKETED

DEC 0 5 2003

## Civil Cover Sheet 03C 8772

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

JUDGE RONALD GUZMAN

| | |
|---|---|
| **Plaintiff(s): Howard E. Leventhal, an individual; and Stealth MediaLabs, Inc., a Nevada Corporation** | **Defendant(s):Gene Byron Schenberg, an individual; 321 Studios, Inc. a Missouri Corporation; Robert H. Moore, Robert Semann, Scott Christian, John Huhn, Mike Wozniak, Thomas Fitzsimmons and James Daly, individuals** MAGISTRATE JUDGE DENLOW |
| County of Residence: Lake, Illinois | County of Residence: St Louis, MO |
| Plaintiff's Atty: Howard Leventhal, Pro Se Stealth MediaLabs, Inc. 11475 Comm'l Ave #11, Richmond, IL 60071 847-778-1801 | Defendant's Atty: Richard F. Huck III 168 North Meramec Av 4th Fl St Louis, MO 63105-0800 314-863-0800 |

II. Basis of Jurisdiction:          **4. Diversity (complete item III)**

III. Citizenship of Principal Parties **(Diversity Cases Only)**
          Plaintiff:-1 Citizen of This State
          Defendant:-2 Citizen of Another State

IV. Origin :                    **1. Original Proceeding**

V. Nature of Suit:              **820 Copyrights**

VI.Cause of Action:             **COPYRIGHT INFRINGEMENT, Copyright Act of 1976, Title 17, Ch. 5, Sec 501.**

VII. Requested in Complaint
          Class Action: No
          Dollar Demand: 5,000,000.00
          Jury Demand: Yes

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature: _____ 12/3/03

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

**DOCKETED**

DEC 0 5 2003

the Matter of

Leventhal et al

vs.

Schenberg et al

Case Number: **03C 8772**

JUDGE RONALD GUZMAN

PPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

LEVENTHAL + STEALTH MEDIALABS, INC., Plantiffs

MAGISTRATE JUDGE DENLOW

| (A) | | | | (B) | | | |
|---|---|---|---|---|---|---|---|
| SIGNATURE | | | | SIGNATURE | | | |
| NAME *HOWARD LEVENTHAL* | | | | NAME | | | |
| FIRM *(Pro Se) Stealth Media Labs, Inc.* | | | | FIRM | | | |
| STREET ADDRESS *1147S Commercial Ave #11* | | | | STREET ADDRESS | | | |
| CITY/STATE/ZIP *Richmond, IL 60071* | | | | CITY/STATE/ZIP | | | |
| TELEPHONE NUMBER *847-778-1801* | FAX NUMBER *312-896-9235* | | | TELEPHONE NUMBER | FAX NUMBER | | |
| E-MAIL ADDRESS *hleventhal@hotmail.com* | | | | E-MAIL ADDRESS | | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | |
| MEMBER OF TRIAL BAR? | YES ☐ | NO ☒ | | MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ | |
| TRIAL ATTORNEY? | YES ☐ | NO ☒ | | TRIAL ATTORNEY? | YES ☐ | NO ☐ | |
| | | | | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ | |

| (C) | | | | (D) | | | |
|---|---|---|---|---|---|---|---|
| SIGNATURE | | | | SIGNATURE | | | |
| NAME | | | | NAME | | | |
| FIRM | | | | FIRM | | | |
| STREET ADDRESS | | | | STREET ADDRESS | | | |
| CITY/STATE/ZIP | | | | CITY/STATE/ZIP | | | |
| TELEPHONE NUMBER | FAX NUMBER | | | TELEPHONE NUMBER | FAX NUMBER | | |
| E-MAIL ADDRESS | | | | E-MAIL ADDRESS | | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | |
| MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ | | MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ | |
| TRIAL ATTORNEY? | YES ☐ | NO ☐ | | TRIAL ATTORNEY? | YES ☐ | NO ☐ | |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ | | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☒ | |